## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**Michelle Armstrong,**

   *Plaintiff,*

   v.

**Jefferson Capital Systems, LLC; T-Mobile USA, Inc. s/b/a Sprint Corporation;** *and* **Experian Information Solutions, Inc.,**

   *Defendants.*

Case No: 8:24-cv-959

**JURY TRIAL DEMANDED**

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW the Plaintiff, **Michelle Armstrong** ("**Ms. Armstrong**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendants, **Jefferson Capital Systems** ("Jefferson"), T-Mobile, USA, Inc., successor-by-acquisition of Sprint Corporation ("**Sprint**" or "**T-Mobile**") and **Experian Information Solutions, Inc.** ("**Experian**") (jointly, the "**Defendants**"), stating as follows:

## PRELIMINARY STATEMENT

1. This is an action brought by Ms. Armstrong against Experian for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("**FCRA**"), against Jefferson for violations of the *Fair Debt Collection Practices Act*, 15 U.S.C. § 1692, *et seq.* ("**FDCPA**"), and against T-Mobile for violations of the *Florida Consumer Collection Practices Act*, Section 559.55, Florida Statutes, et seq ("**FCCPA**") and negligence.

## **JURISDICTION AND VENUE**

2.      Subject matter jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, the FDCPA, 15 U.S.C. § 1692k(d), and 28 U.S.C. § 1331.

3.      The Defendants are subject to the provisions of the FCRA and/or the FDCPA, and to the jurisdiction of this Court pursuant to Fed. R. Civ. P. 4(k)(1)(A) and Section 48.193, Florida Statutes.

4.      Venue is proper in the Middle District of Florida, pursuant to 28 U.S.C. §1391(b)(2), because the events giving rise to this cause of action occurred within this District.

## **PARTIES**

5.      **Ms. Armstrong** is a natural person residing in the Town of Mango, Hillsborough County, Florida, and a *Consumer* as defined by the FCRA, 15 U.S.C. §1681a(c), and the FDCPA, 15 U.S.C. § 1692a(3).

6.      Ms. Armstrong was previously known as Michelle Douglas.

7.      **Experian** is an Ohio corporation with a primary business address of **475 Anton Blvd., Costa Mesa, CA 92626.**

8.      Experian is registered to conduct business in the State of Florida, where its registered agent is **CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.**

9.      Experian is a *Consumer Credit Reporting Agency* ("**CRA**") within the meaning of 15 U.S.C. § 1681a(f), in that, for monetary fees, it regularly engages in the

practice of assembling or evaluating consumer credit information on consumers for the purpose of furnishing consumer reports to third parties, while using means of interstate commerce, specifically the U.S. mail and internet, for the purpose of preparing or furnishing consumer reports.

10.    As a CRA, Experian is aware of its obligations under the FCRA.

11.    **Jefferson** is a Georgia limited liability company, with a principal business address of 200 14th Ave E., Sartell, MN 56377.

12.    Jefferson is registered to conduct business in the State of Florida, where its registered agent is **Corporation Service Company, 1201 Hays St., Tallahassee, FL 32301**.

13.    Jefferson is a *Debt Collector* within the meaning of the FDCPA, 15 U.S.C. §1692a(6), and the FCCPA, § 559.55(7), Fla. Stat., in that it uses an instrumentality of commerce, including the internet, postal mail, and / or telephone, interstate and within the State of Florida, for its business, the principal purpose of which is the collection of debts, and / or it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

14.    Jefferson is registered with the Florida Office of Financial Regulation as a *Consumer Collection Agency* **("CCA")**, holding license number **CCA9901497.**

15.    **T-Mobile** is a Delaware Corporation with a principal place of business at 12920 S.E. 38th St., Bellevue, WA 98006

16.     T-Mobile's Florida registered agent is Corporation Service Company, 1201 Hays St., Tallahassee, FL, 32301.

17.     T-Mobile announced a merger with Sprint Corporation on April 29, 2018 and completed the merger on April 1, 2020, with T-Mobile as the surviving entity.

## FACTUAL ALLEGATIONS
### The Alleged Debt

18.     In or around 2017, Ms. Armstrong opened an account with Sprint for personal cellular phone service.

19.     Around November 2019, Ms. Armstrong allegedly incurred a $1,147 debt (the "**Debt**") to Sprint.

20.     Ms. Armstrong disputes she owed a $1,147 debt to Sprint.

21.     The Debt arose from services which were primarily for family, personal, or household purposes, specifically cellular phone services, and therefore meets the definition of *Debt* under the FDCPA, 15 U.S.C. §1692a(5).

22.     Sprint then placed the Debt for collection with Sunrise Credit Services ("**Sunrise**"), a debt collector based in Farmingdale, New York.

23.     Sunrise thereafter began reporting the Debt, monthly, to Experian. **SEE PLAINTIFF'S EXHIBIT A.**

24.     Sunrise reported to Experian that Ms. Armstrong owed $1,147, that the original creditor was "Sprint," and that the account was "individual" (*i.e.*, not joint). ***Id.***

## Ms. Armstrong's Disputes Concerning The Debt

25.     On September 1, 2020, Ms. Armstrong disputed Sunrise's reporting alleging $1,147 was owed to Sprint.

26.     Experian, upon receipt of Ms. Armstrong's dispute, sent Sunrise an *Automated Consumer Dispute Verification* Request ("**ACDV**") form through an online platform known as e-OSCAR, asking Sunrise to make a reasonable investigation into the dispute.

27.     Sunrise responded to the ACDV, stating that the accuracy of the reported information ***could not be*** verified and thus requested that Experian delete its tradeline.

28.     Experian thereafter sent Ms. Armstrong results of its dispute investigation, affirming that the disputed information concerning the purported Debt had been deleted.

29.     Experian was then required to use reasonable procedures to ensure the deleted information was not reinserted into the credit file it maintained concerning Ms. Armstrong.

30.     The only exception would be if Experian could later obtain certification of accuracy, and then provide notice to Ms. Armstrong within 5 business days of the reinsertion of the negative information, along with written notice of her right to add a consumer statement rebutting the information as well as the name and address of the source of information used to certify accuracy. *See* §1681i(a)(5)(B).

## **Disputed, Deleted Debt Re-reported By AFNI**

31.     On information and belief, Sunrise then returned the Debt to Sprint, noting that Ms. Armstrong disputed the account.

32.     Sometime in October 2020, Sprint placed the Debt with another debt collector – AFNI, Inc. ("**AFNI**"), and instructed it to collect the purported $1,147 balance claimed owed.

33.     In November 2020, AFNI began reporting the Debt to Experian. **SEE PLAINTIFF'S EXHIBIT B.**

34.     AFNI reported the same balance, original creditor, date of first delinquency, and ECOA code as Sunrise. *Id.*

35.     Despite the fact that Experian had just removed the *identical* information from Ms. Armstrong's credit file less than two months prior, Experian accepted the report from AFNI without question and re-inserted the derogatory information into Ms. Armstrong's credit file.

36.     On August 10, 2021, Ms. Armstrong filed a lawsuit against AFNI and Experian, alleging violation of the FCRA based on the facts above. *See Armstrong v. AFNI, Inc. and Experian Information Solutions, Inc.*, 8:21-cv-01907-MSS-TGW.

37.     The matter was resolved to the satisfaction of all parties.

38.     On information and belief, AFNI returned the Debt to Sprint, noting that Ms. Armstrong disputed the account.

## Disputed, Deleted Debt Re-reported by Convergent

39.     Sometime in November 2021, Sprint placed the Debt for collection with yet another debt collector – Convergent Outsourcing, Inc. ("Convergent"), a Washington-based debt collector.

40.     In December 2021, Convergent began reporting the Debt to Experian. **SEE PLAINTIFF'S EXHIBIT C.**

41.     Convergent reported the same balance, original creditor, date of first delinquency and ECOA code as Sunrise and AFNI. *Id.*

42.     Despite the fact that Experian had removed the identical information from Ms. Armstrong's credit file twice prior, and had been served with a lawsuit in the past concerning the reinsertion of previously-deleted information without verification of accuracy or notice to the consumer of reinsertion, Experian accepted the report from Convergent without question and re-inserted the derogatory information into Ms. Armstrong's credit file for a second time.

43.     On May 17, 2022, Ms. Armstrong filed suit against Experian and Convergent, again alleging that it re-inserted previously-deleted information into her credit file, without first obtaining verification of accuracy. *See Armstrong v. Convergent Outsourcing, Inc. and Experian Information Solutions, Inc.*, 8:22-cv-1132-KKM-AAS.

44.     The lawsuit was settled to the satisfaction of all parties.

45.     On information and belief, after the May 2022 lawsuit, Convergent returned the Debt to Sprint, noting that Ms. Armstrong disputed the account.

## Disputed, Deleted Debt Re-reported by Jefferson

46.    In or around December 2023, T-Mobile sold the rights to the Debt outright, and assigned the Debt to Jefferson, as part of a bulk portfolio sale of thousands of charged-off Sprint accounts, all of which, or almost all of which, had been placed with multiple collection agencies in the past, similar to Ms. Armstrong's alleged Debt.

47.    At the time of the sale, T-Mobile had been made aware of Ms. Armstrong's disputes concerning the Sprint Debt at least three times, two of which resulted in litigation being filed.

48.    T-Mobile was thus reasonably aware (1) the Debt was disputed and (2) the Debt was not legitimately owed.

49.    Despite this, T-Mobile sold the Debt as a purported non-disputed, legitimately-owed account to Jefferson, and thus asserted a debt was valid when it knew it was not.

50.    As stated above, a debt collector who becomes aware a debt is disputed is required to include notice of dispute in all subsequent communications in connection with the collection of that debt. *See* 15 U.S.C. § 1692e(8).

51.    In December 2023, Jefferson began reporting the Debt to Experian. **SEE PLAINTIFF'S EXHIBIT D.**

52.    Jefferson reported the same balance, original creditor, balance, date of first delinquency, and ECOA code as Sunrise, AFNI, and Convergent. ***Id.***

53.     Once again, despite the fact Experian had removed the identical information from Ms. Armstrong's credit file three times prior, and was keenly aware of the problematic reinsertion of deleted information into Ms. Armstrong's file from two prior FCRA lawsuits, Experian accepted the report from Jefferson without question and re-inserted the derogatory information into Ms. Armstrong's credit file without any notation that the information was disputed.

54.     Experian neither asked for, nor received, any verification of accuracy.

55.     Experian did not notify Ms. Armstrong within 5 business days of the Sprint debt being re-inserted into her file that previously-deleted information had been re-inserted, nor did it provide her with the relevant contact information of the person it had been verified with, nor did it provide her notice of her right to append a consumer statement rebutting the information.

56.     Thus, the Jefferson tradeline re-appeared on Ms. Armstrong's credit report as a purported "non-disputed" debt.

57.     Jefferson is a large debt buyer and debt collection agency which purchases tens of millions of dollars of face-value debts each year, including a large number of consumer cell phone debts.

58.     Jefferson was well-aware the portfolio of debts it purchased from T-Mobile had been placed with multiple collection agencies prior to the sale, and that a substantial portion of the accounts in the portfolio had already been disputed by the relevant consumers.

59.     As such, Jefferson knew – or reasonably should have known – that since a substantial percentage of Sprint debts had been previously disputed, many of the accounts it purchased had to be reported as such.

60.     On information and belief, Jefferson has no policies in place to so much as *ask* creditors like T-Mobile, who sell debts to it, whether the creditor was aware of any prior disputes by the relevant consumers and to simply identify which debts were disputed.

61.     Assuming, *arguendo*, that Sprint failed to disclose to Jefferson the Debt was disputed, reliance on an original creditor's erroneous records is not a defense to an FDCPA action. *See Owen* v. *I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011) (holding that debt collectors remain liable even when violations are not knowing or intentional).

62.     Jefferson's failure to disclose that the Debt was disputed materially damaged Ms. Armstrong's credit scores.

63.     The failure to properly report a disputed debt *as disputed* creates a concrete injury-in-fact because the failure to disclose this information affects credit scores, meaning Ms. Armstrong suffered "a real risk of financial harm caused by an inaccurate credit rating." *Evans v. Portfolio Recovery Associates*, 889 F. 3d 337, 345 (7th Cir 2018).

## Jefferson Reports False Data to CRAs

64.     Jefferson's report to Experian indicated a "Date of status" of December 2023. **SEE PLAINTIFF'S EXHIBIT D.**

65.     The "Date of status" of a collection account indicates the date an account was first designated to be "in collection." *Cf. Baker v. Capital One Bank*, No. CV 04–1192 PHX–NVW, 2006 WL 2523440, at *4–*5 (D.Ariz. Aug. 29, 2006).

66.     Thus, Jefferson's report falsely implies that the account was first referred for collection in December 2023, even though the true date was November 2019, as alleged by Sprint.

67.     The "Date of status" is a key point of data evaluated by many versions of FICO® credit scores, including FICO Model 2, used by Experian for mortgage evaluations. The more recent the "Date of status," the more adversely the information is factored against the consumer. *See Toliver v. Experian Info. Solutions, Inc.*, 973 F. Supp. 2d 707 (S.D. Tex. 2013).

68.     Further, "(a) reasonable jury could find that the 'Date of status' entry was "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Id.* (quoting *Sepulvado v. CSC Credit Services, Inc.*, 158 F.3d 890 (5th Cir. 1998)).

69.     Experian was aware from prior reports from Sunrise, AFNI and Convergent that the December 2023 "Date of Status" for the Debt was not accurate, as the Debt had been reported with a status of "in collection" at least since May 2020 or earlier.

70.     Despite these obvious and significant flaws, Experian re-incorporated the account into Ms. Armstrong's data file, and included the tradeline in reports sold concerning her.

71.    Jefferson also reported to Experian that the account was "First reported" in March 2024, when it had been reported since at least May 2020, and likely earlier. **PLAINTIFF'S EXHIBIT D.**

<u>**Jefferson Reports False "Date Opened"**</u>

72.    Jefferson reported to Experian that the Sprint account had a "Date opened" of December 2023. **SEE PLAINTIFF'S EXHIBIT D**.

73.    Jefferson's report is false since Ms. Armstrong opened an account with Sprint around 2017.

74.    Experian knew that Jefferson's reported information was false, since the account had been reported to Experian prior to the date it was now being reported as "opened."

75.    A reasonable and prudent reader of Ms. Armstrong's credit report would infer that an account indicating a balance owed to Sprint reflecting a "Date opened" of December 2023 means – as the plain language implies – the account was opened with Sprint in December 2023. *Toliver,* 973 F. Supp. 2d 707, 721 ("Here, there is no language to indicate that 'Date opened' means anything other than the date that the consumer opened the account, as it does for the majority of accounts on (Plaintiff's) credit report…. (A) reasonable jury could find that the "Date opened" entry was misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.") (Internal quotations omitted).

76.    To the extent that Jefferson may have been relying upon Metro 2 guidelines promulgated by the Consumer Data Industry Association when

determining how to report the "Date opened," "Date of status," and date "First reported," such guidelines are voluntary and hold no authority of law. *See, e.g., Dash v. Midland Funding LLC*, Case No: 8:16-cv-2128-T-36AAS (M.D. Fla. Mar. 3, 2017) quoting *Mestayer v. Experian Info. Sols., Inc*, 15-CV-03645-EMC, 2016 WL 631980, at *4 (N.D. Cal. Feb. 17, 2016) ("[Plaintiff] has failed to point to any authority indicating that a failure to comply with an industry standard is a failure to comply with the law.")

77.    The FCRA requires anyone, including Jefferson, to not furnish data to a CRA unless it is accurate and verifiable.

78.    Jefferson knew, when making its report to Experian, that the Debt was not founded on an account "opened" in December 2023 and did not have a legitimate "Date of status" of December 2023.

79.    Had Jefferson reported the account correctly, with a true "Date of status" and "Date opened", Experian and the other nationwide CRAs would still have accepted the report and published it, albeit with accurate, instead of false, data.

80.    Indeed, one of the primary reasons creditors frequently rotate debts from agency to agency is to exploit this very issue in the CRAs reporting system. Creditors like Sprint know that due to the proliferation of free credit-monitoring programs which advertise their services (*e.g.*, CreditKarma.com), consumers are much more aware of their credit reports and scores than they were even five years ago.

81.    Thus, a creditor who assigns a debt for collection only once is placed at a significant disadvantage over a creditor who assigns the same debt for collection to agency after agency, since each new placement of the debt creates an opportunity for

the agency to re-report the debt as "new" and cause a significant drop to a consumer's credit score.

82.    T-Mobile does not sue consumers for purported unpaid cell phone bills of the dollar amount claimed owed by Ms. Armstrong.

83.    Rather, it relies almost exclusively on hiring third-party agencies, like Sunrise, AFNI, Convergent, and Jefferson who, in turn, utilize credit reporting as their main tool to collect these debts from consumers.

84.    If Sprint were to place the debt for collection a single time, it would be reported as "new" once, causing a single instance of a consumer being notified by smartphone apps like CreditKarma.com that "new" negative history had appeared on their report, along with a corresponding credit score drop.

85.    But, since Sprint rotates debts to different debt collectors frequently, it has multiple opportunities to have its agents report the account as "new" to the CRAs and create multiple alerts from smartphone apps like CreditKarma.com that ostensibly "new" negative history had been added to their report.

86.    Indeed, a debt buyer who does not exploit this loophole almost certainly collects less of its investment back, since negative credit reporting is virtually the only leverage Jefferson has over consumers.

87.    Metro 2 Guidelines were developed more than 14 years ago, when rotation of debt to different agencies was rare.

88.    The Metro 2 Guidelines did not contemplate the possibility that the same debt could be placed for collection *more than one time*, but rather predicated its policies

on the notion a creditor would place the item for collection only once, and leave it with the same agency until collected or the running of the reporting seven-year period expired.

89.     Jefferson was fully aware when it made its reports to Experian and the other CRAs that the information it was reporting was not true.

90.     Jefferson intentionally chose to report information in a false manner – and a manner in which it knew would cause unfair, unwarranted damage to Ms. Armstrong's credit scores.

91.     Indeed, Sprint's re-placement of the Debt from AFNI to Convergent to Jefferson was an intentional act and part of a broader general policy, calculated in large part to cause additional damage to occur to the credit scores of consumers like Ms. Armstrong.

92.     Jefferson was under no obligation to report the account as opened in December 2023 with a December 2023 date of status.

93.     Jefferson knew that reporting information in this fashion required communication of information known to be false to third parties.

94.     Jefferson did not risk violating the FDCPA by not following Metro 2 Guidelines. *See Dash.*

95.     Indeed, the debt collection industry has made this very argument in various federal courts on multiple occasions. *See Davenport v. Capio Partners*, Case No. 20-cv-01700 (M.D. Pa. 2021) (Debt collector's motion to dismiss consumer's FDCPA

claim concerning debt collector's credit reporting violated Metro 2 Guidelines granted; court held that "industry standards for consumer data are not the law of the land.")

96.    Conversely, following Metro 2 Guidelines does not inoculate Jefferson from liability under the FDCPA.

### Experian's Failure to Maintain Reasonable Procedures

97.    Pursuant to 15 U.S.C. § 1681i(a)(5)(C), Experian was required by the FCRA to "maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted...."

98.    Jefferson reported information that had previously been deleted in response to a dispute from Ms. Armstrong – information Experian was well-aware was problematic and disputed.

99.    On information and belief, Experian's systems are programmed to consider information about an identically reported debt to be "different" so long as the debt collector reporting the debt is a different entity.

100.    However, the fact that a different debt collector is reporting a particular debt does nothing to change the underlying data being reported.

101.    Had Experian used reasonable procedures, its systems would have flagged the previously deleted data and blocked it from being reinserted.

102.    Additionally, on information and belief, Experian did not verify that the information could now be verified as accurate, contrary to the requirements of 15 U.S.C. § 1681i(a)(5)(B)(i).

103.    Even assuming, *arguendo*, that Experian had obtained the FCRA-mandated verification of accuracy to reinsert the Jefferson tradeline into Ms. Armstrong's reports, it would still be inherently unreasonable to include information from a furnisher of data when that same information had been deleted in response to an ACDV, indicating that the information ***could not be*** confirmed as accurate.

104.    Experian also failed to mail written notices to Ms. Armstrong stating that it was reinserting previously deleted information, disclosing the business name and address of the furnisher of information making such verification, and explaining to Ms. Armstrong that she has the right to add a statement disputing the accuracy of the alleged Debt.

105.    As a result of Experian's actions, disputed, unverifiable, previously deleted information was reinserted into Ms. Armstrong's credit reports, without a legally required notice of dispute.

106.    Experian also maintains no procedures to ensure accounts are reported with accurate "Date Opened" and "Date of Status" data.

107.    To the contrary, Experian encourages its furnishers of data to report information using Metro 2 Guidelines – guidelines Experian itself was involved in establishing, along with Equifax and Trans Union – even though these guidelines are woefully antiquated and result in reports which are far from accurate.

108.    Ms. Armstrong is far from the only consumer to sue Experian for reinserting previously deleted accounts without notice to the consumer and is thus

aware that its procedures frequently result in the inclusion of previously deleted, disputed accounts, without verification or notice to the consumer.

109.    Experian's knowing and repeated conduct warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols., Inc.,* Case No.: 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages against Experian for its repeated, willful violations of the FCRA).

110.    As a result of the Defendants' actions, Ms. Armstrong has suffered damages, including lost financial opportunities, loss of credit, lower credit scores, significant emotional distress and aggravation, and damage to her reputation.

111.    Ms. Armstrong has hired the aforementioned law firm to represent her in this matter and has assigned the firm her right to fees and costs.

### COUNT I
### <u>EXPERIAN'S WILLFUL VIOLATIONS OF THE FCRA –</u>
### <u>15 U.S.C. § 1681i(a)(5)(B)(i)</u>

112.    Ms. Armstrong adopts and incorporates paragraphs 1 – 111 as if fully stated herein.

113.    Experian willfully violated **15 U.S.C. § 1681i(a)(5)(B)(i)** when it repeatedly failed to obtain certification of accuracy of previously deleted information, specifically, the Jefferson iteration of the Sprint tradeline, and it nonetheless reinserted information about the Sprint debt into Ms. Armstrong's credit file, despite it having been disputed and thrice-deleted.

114.    Experian's conduct was willful and intentional, or, alternately, was done with a reckless disregard for a consumer's rights under the FCRA to have reports

produced with maximum possible accuracy and to prevent the re-insertion of previously deleted tradelines.

115.   Experian's policies could reasonably be foreseen to cause harm to Ms. Armstrong.

116.   Indeed, as a result of Experian's conduct, Ms. Armstrong suffered damage to her credit report and scores, as well as emotional distress in having to repeatedly deal with an account which had been deleted as a result of her dispute.

117.   As a result of its conduct, Experian is liable to Ms. Armstrong, pursuant to the FCRA, for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Ms. Armstrong respectfully requests this Honorable Court enter judgment against Experian and for her for:

a.   The greater of statutory damages of **$1,000.00** per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A) or Ms. Armstrong's actual damages and related economic and non-economic injuries pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.   Punitive damages for Experian's willful and intentional acts;

c.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3); and,

d.   Such other relief that this Court deems just and proper.

**COUNT II**
**EXPERIAN'S NEGLIGENT VIOLATIONS OF THE FCRA –**
**15 U.S.C. § 1681i(a)(5)(B)(i)**
**IN THE ALTERNATIVE TO COUNT I**

118.   Ms. Armstrong adopts and incorporates paragraphs 1 – 111 as if fully stated herein.

119.   Experian negligently violated **15 U.S.C. § 1681i(a)(5)(B)(i)** when it failed to implement procedures to obtain certification of accuracy of previously deleted information, specifically, the Jefferson iteration of the Sprint tradeline, and it nonetheless reinserted information about the Sprint debt into Ms. Armstrong's credit file, despite it having been disputed and thrice-deleted.

120.   Experian's conduct was negligent under the FCRA to not ensure Ms. Armstrong's report was produced with maximum possible accuracy and to prevent the re-insertion of previously deleted tradelines.

121.   Experian's negligent policies could reasonably be foreseen to cause harm to Ms. Armstrong.

122.   Indeed, as a result of Experian's conduct, Ms. Armstrong suffered damage to her credit report and scores, as well as emotional distress in having to repeatedly deal with an account which had been deleted as a result of her dispute.

**WHEREFORE,** Ms. Armstrong respectfully requests this Honorable Court enter judgment against Experian and for her for:

a.   Ms. Armstrong's actual damages and related economic and non-economic injuries pursuant to 15 U.S.C. § 1681o(a)(1);

b.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681o(a)(2); and,

c.   Such other relief that this Court deems just and proper.

**COUNT III**
**EXPERIAN'S WILLFUL VIOLATIONS OF THE FCRA**
**15 U.S.C. § 1681i(a)(5)(B)(ii)**

123.   Ms. Armstrong adopts and incorporates paragraphs 1 – 111 as if fully stated herein.

124.   Experian willfully violated **15 U.S.C. § 1681i(a)(5)(B)(ii)** when it failed to provide written notice that it was reinserting previously thrice-deleted information into Ms. Armstrong's credit file, when it re-inserted the collection tradeline concerning a $1,147 Sprint debt without notice to Ms. Armstrong.

125.   Experian's conduct was willful and intentional, or, alternately, was done with a reckless disregard for a consumer's rights under the FCRA to have reports produced with maximum possible accuracy and to prevent the re-insertion of previously deleted tradelines.

126.   Experian's policies could reasonably be foreseen to cause harm to Ms. Armstrong.

127.   Indeed, as a result of Experian's conduct, Ms. Armstrong suffered damage to her credit report and scores, as well as emotional distress in having to deal with an account which had been deleted as a result of her dispute.

128.   As a result of its conduct, Experian is liable to Ms. Armstrong, pursuant to the FCRA, for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Ms. Armstrong respectfully requests this Honorable Court enter judgment against Experian and for her for:

a.  The greater of statutory damages of **$1,000.00** per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A) or Ms. Armstrong's actual damages and related economic and non-economic injuries pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.  Punitive damages for Experian's willful and intentional acts;

c.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3); and,

d.  Such other relief that this Court deems just and proper.

## COUNT IV
## EXPERIAN'S NEGLIGENT VIOLATIONS OF THE FCRA
## 15 U.S.C. § 1681i(a)(5)(B)(ii)
## IN THE ALTERNATIVE TO COUNT III

129.  Ms. Armstrong adopts and incorporates paragraphs 1 – 111 as if fully stated herein.

130.  Experian negligently violated **15 U.S.C. § 1681i(a)(5)(B)(ii)** when it failed to establish procedures to provide written notice that it was reinserting previously deleted information into Ms. Armstrong's credit file, when it re-inserted the disputed collection tradeline concerning a $1,147 Sprint debt without notice to Ms. Armstrong.

131.   Experian's conduct was negligent under the FCRA to not ensure Ms. Armstrong's report was produced with maximum possible accuracy and to prevent the re-insertion of previously deleted tradelines.

132.   Experian's policies could reasonably be foreseen to cause harm to Ms. Armstrong.

133.   Indeed, as a result of Experian's conduct, Ms. Armstrong suffered damage to her credit report and scores, as well as emotional distress in having to deal with an account which had been deleted as a result of her dispute.

**WHEREFORE,** Ms. Armstrong respectfully requests this Honorable Court enter judgment against Experian and for her for:

a.   Ms. Armstrong's actual damages and related economic and non-economic injuries pursuant to 15 U.S.C. § 1681o(a)(1);

b.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681o(a)(2); and,

c.   Such other relief that this Court deems just and proper

**COUNT V**
**EXPERIAN'S WILLFUL VIOLATIONS OF THE FCRA**
**15 U.S.C. § 1681i(a)(5)(B)(iii)(I)**

134.   Ms. Armstrong adopts and incorporates paragraphs 1 – 111 as if fully stated herein.

135.   Experian willfully violated **15 U.S.C. § 1681i(a)(5)(B)(iii)(I)** when it failed to provide a written statement to Ms. Armstrong that it was reinserting

previously deleted and disputed information, when it re-inserted the collection tradeline concerning a $1,147 Sprint debt without notice to Ms. Armstrong.

136.  Experian's conduct was willful and intentional, or, alternately, was done with a reckless disregard for a consumer's rights under the FCRA to have reports produced with maximum possible accuracy and to prevent the re-insertion of previously deleted tradelines.

137.  Experian's policies could reasonably be foreseen to cause harm to Ms. Armstrong.

138.  Indeed, as a result of Experian's conduct, Ms. Armstrong suffered damage to her credit report and scores, as well as emotional distress in having to deal with an account which she thought had been deleted as a result of her dispute.

139.  As a result of its conduct, Experian is liable to Ms. Armstrong, pursuant to the FCRA, for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Ms. Armstrong respectfully requests this Honorable Court enter judgment against Experian and for her for:

a.  The greater of statutory damages of **$1,000.00** per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A) or Ms. Armstrong's actual damages and related economic and non-economic injuries pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.  Punitive damages for Experian's willful and intentional acts;

c.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3); and,

d.      Such other relief that this Court deems just and proper.

## COUNT VI
## EXPERIAN'S NEGLIGENT VIOLATIONS OF THE FCRA
## 15 U.S.C. § 1681i(a)(5)(B)(iii)(I)
## IN THE ALTERNATIVE TO COUNT V

140.    Ms. Armstrong adopts and incorporates paragraphs 1 – 111 as if fully stated herein.

141.    Experian negligently violated **15 U.S.C. § 1681i(a)(5)(B)(iii)(I)** when it failed to implement procedures that require a written statement to be provided to Ms. Armstrong when it was reinserting previously deleted and disputed information, and it re-inserted the disputed collection tradeline concerning a $1,147 Sprint debt without notice to Ms. Armstrong.

142.    Experian's policies could reasonably be foreseen to cause harm to Ms. Armstrong.

143.    Indeed, as a result of Experian's conduct, Ms. Armstrong suffered damage to her credit report and scores, as well as emotional distress in having to deal with an account which she thought had been deleted as a result of her dispute.

**WHEREFORE,** Ms. Armstrong respectfully requests this Honorable Court enter judgment against Experian and for her for:

a.      Ms. Armstrong's actual damages and related economic and non-economic injuries pursuant to 15 U.S.C. § 1681o(a)(1);

b.      Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681o(a)(2); and,

c.    Such other relief that this Court deems just and proper.

## COUNT VII
## EXPERIAN'S WILLFUL VIOLATIONS OF THE FCRA
## 15 U.S.C. § 1681i(a)(5)(B)(iii)(II)

144.   Ms. Armstrong adopts and incorporates paragraphs 1 – 111 as if fully stated herein.

145.   Experian willfully violated **15 U.S.C. § 1681i(a)(5)(B)(iii)(II)** when it failed to provide written notice to Ms. Armstrong within the proscribed time, containing the business name and address of the entity associated with the reinsertion of the previously deleted information.

146.   Experian's conduct was willful and intentional, or, alternately, was done with a reckless disregard for a consumer's rights under the FCRA to have reports produced with maximum possible accuracy and to prevent the re-insertion of previously deleted tradelines.

147.   Experian's policies could reasonably be foreseen to cause harm to Ms. Armstrong.

148.   Indeed, as a result of Experian's conduct, Ms. Armstrong suffered damage to her credit report and scores, as well as emotional distress in having to deal with an account which had already been deleted as a result of her dispute.

149.   As a result of its conduct, Experian is liable to Ms. Armstrong, pursuant to the FCRA, for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Ms. Armstrong respectfully requests this Honorable Court enter judgment against Experian and for her for:

a.   The greater of statutory damages of **$1,000.00** per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A) or Ms. Armstrong's actual damages and related economic and non-economic injuries pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.   Punitive damages for Experian's willful and intentional acts;

c.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3); and,

d.   Such other relief that this Court deems just and proper.

**COUNT VIII**
**EXPERIAN'S NEGLIGENT VIOLATIONS OF THE FCRA**
**15 U.S.C. § 1681i(a)(5)(B)(iii)(II)**
**IN THE ALTERNATIVE TO COUNT VII**

150.   Ms. Armstrong adopts and incorporates paragraphs 1 – 111 as if fully stated herein.

151.   Experian violated **15 U.S.C. § 1681i(a)(5)(B)(iii)(II)** when it failed to provide written notice to Ms. Armstrong within the proscribed time, containing the business name and address of the entity associated with the reinsertion of the previously deleted information.

152.   Experian's policies could reasonably be foreseen to cause harm to Ms. Armstrong.

153.   Indeed, as a result of Experian's conduct, Ms. Armstrong suffered damage to her credit report and scores, as well as emotional distress in having to deal with an account which had already been deleted as a result of her dispute.

**WHEREFORE,** Ms. Armstrong respectfully requests this Honorable Court enter judgment against Experian and for her for:

a.   Ms. Armstrong's actual damages and related economic and non-economic injuries pursuant to 15 U.S.C. § 1681o(a)(1);

b.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681o(a)(2); and,

c.   Such other relief that this Court deems just and proper.

**COUNT IX**
**EXPERIAN'S WILLUL VIOLATIONS OF THE FCRA**
**15 U.S.C. § 1681i(a)(5)(B)(iii)(III)**

154.   Ms. Armstrong adopts and incorporates paragraphs 1 – 111 as if fully stated herein.

155.   Experian violated **15 U.S.C. § 1681i(a)(5)(B)(iii)(III)** when it failed to provide written notice that Ms. Armstrong had the right to add a statement of dispute in her file regarding the re-inserted tradeline.

156.   Experian's conduct was willful and intentional, or, alternately, was done with a reckless disregard for a consumer's rights under the FCRA to have reports produced with maximum possible accuracy and to prevent the re-insertion of previously deleted tradelines.

157.   Experian's policies could reasonably be foreseen to cause harm to Ms. Armstrong.

158.   Indeed, as a result of Experian's conduct, Ms. Armstrong suffered damage to her credit report and scores, as well as emotional distress in having to deal with an account which had been deleted as a result of her dispute.

159.   As a result of its conduct, Experian is liable to Ms. Armstrong, pursuant to the FCRA, for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Ms. Armstrong respectfully requests this Honorable Court enter judgment against Experian and for her for:

a.   The greater of statutory damages of **$1,000.00** per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A) or Ms. Armstrong's actual damages and related economic and non-economic injuries pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.   Punitive damages for Experian's willful and intentional acts;

c.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3); and,

d.   Such other relief that this Court deems just and proper.

**COUNT X**
**EXPERIAN'S NEGLIGENT VIOLATIONS OF THE FCRA**
**15 U.S.C. § 1681i(a)(5)(B)(iii)(III)**
**IN THE ALTERNATIVE TO COUNT IX**

160.   Ms. Armstrong adopts and incorporates paragraphs 1 – 111 as if fully stated herein.

161.   Experian violated **15 U.S.C. § 1681i(a)(5)(B)(iii)(III)** when it failed to provide written notice that Ms. Armstrong had the right to add a statement of dispute in her file regarding the re-inserted tradeline.

162.   Experian's policies could reasonably be foreseen to cause harm to Ms. Armstrong.

163.   Indeed, as a result of Experian's conduct, Ms. Armstrong suffered damage to her credit report and scores, as well as emotional distress in having to deal with an account which had been deleted as a result of her dispute.

**WHEREFORE,** Ms. Armstrong respectfully requests this Honorable Court enter judgment against Experian and for her for:

a.    Ms. Armstrong's actual damages and related economic and non-economic injuries pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681o(a)(2); and,

c.    Such other relief that this Court deems just and proper.

**COUNT XII**
**JEFFERSON'S VIOLATIONS OF THE FDCPA**
**15 U.S.C. § 1692e(8)**

164.   Ms. Armstrong adopts and incorporates paragraphs 1 – 111 as if fully stated herein.

165.   Jefferson violated **15 U.S.C. § 1692e(8)** when Jefferson communicated credit information known to be false, specifically, claiming: (a) the "Date of status" of

the Debt (*e.g.*, the date which the account became a collection) was December 2023, when it was November 2019 or earlier; (b) the account had been "First reported" as of March 2024, when it had been reported since May 2020 or earlier; (c) the "Date opened" was December 2023, when the Sprint account was opened in 2017; and, (d) the Debt was not disputed, when the information was known to be disputed.

166.    Jefferson's actions render it liable for the above-stated violations of the FDCPA, and Ms. Armstrong is therefore entitled to statutory damages up to $1,000.00 as well as other relief.

167.    Jefferson's actions caused Ms. Armstrong to suffer damages to her credit report and scores, as well as emotional distress in having to deal with an account which had already been deleted as a result of her dispute.

**WHEREFORE,** Ms. Armstrong respectfully requests this Honorable Court enter judgment against Jefferson and for her as follows:

a.    Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.    Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.    Such other relief that this Court deems just and proper.

**COUNT XIII**
**JEFFERSON'S VIOLATIONS OF THE FDCPA**
**15 U.S.C. § 1692e(10)**

168.    Ms. Armstrong adopts and incorporates paragraphs 1 – 111 as if fully stated herein.

169.    Jefferson violated **15 U.S.C. § 1692e(10)** when Jefferson made false and / or misleading representations in an attempt to collect the Debt, when it reported the Debt to Experian, claiming: (a) the "Date of status" of the Debt (*e.g.*, the date which the account became a collection) was December 2023, when it was November 2019 or earlier; (b) the account had been "First reported" as of March 2024, when it had been reported since May 2020 or earlier; (c) the "Date opened" was December 2023, when the Sprint account was opened in 2017; and, (d) the Debt was undisputed, when it was disputed.

170.    Jefferson's actions render it liable for the above-stated violations of the FDCPA, and Ms. Armstrong is therefore entitled to statutory damages up to $1,000.00 as well as other relief.

171.    Jefferson's actions caused Ms. Armstrong to suffer damages to her credit report and scores, as well as emotional distress in having to deal with an account which had been deleted as a result of her dispute.

**WHEREFORE,** Ms. Armstrong respectfully requests this Honorable Court enter judgment against Jefferson and for her as follows:

a.    Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.   Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

c.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.   Such other relief that this Court deems just and proper.

## COUNT XIV
## JEFFERSON'S VIOLATIONS OF THE FDCPA
## 15 U.S.C. § 1692e(2)(a)

172.   Ms. Armstrong adopts and incorporates paragraphs 1 – 111 as if fully stated herein.

173.   Jefferson violated **15 U.S.C. § 1692e(2)(a)** when Jefferson made false and misleading representations about the character, amount, and legal status of the Debt when it falsely claimed: (a) the "Date of status" of the Debt (*e.g.*, the date which the account became a collection) was December 2023, when it was November 2019 or earlier; (b) the account had been "First reported" as of March 2024, when it had been reported since May 2020 or earlier; (c) the "Date opened" was December 2023, when the Sprint account was opened in 2017; and, (d) the Debt was not disputed, when it was disputed.

174.   Jefferson's actions render it liable for the above-stated violations of the FDCPA, and Ms. Armstrong is therefore entitled to statutory damages up to $1,000.00 as well as other relief.

175.   Jefferson's actions caused Ms. Armstrong to suffer damages to her credit report and scores, as well as emotional distress in having to deal with an account which had been deleted as a result of her dispute.

**WHEREFORE,** Ms. Armstrong respectfully requests this Honorable Court enter judgment against Jefferson and for her as follows:

a.   Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.   Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

c.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.   Such other relief that this Court deems just and proper.

## COUNT XV
## T-MOBILE'S VIOLATIONS OF THE FCCPA, § 559.72(9), FLA. STAT.

176.   Ms. Armstrong adopts and incorporates paragraphs 1 – 111 as if fully stated herein.

177.   T-Mobile violated § 559.72(9), Fla. Stat., by attempting to enforce a disputed Sprint debt which it had at least three debt collectors report back to it had been disputed – two of which reported the debt was involved in legal action – but nonetheless asserted the Debt was legitimate and enforceable.

178.   T-Mobile's actions were willful, intentional, and done for the express purpose of collecting an unenforceable debt from Plaintiff and profiting from it.

179.   T-Mobile's actions caused Ms. Armstrong to suffer damages to her credit report and scores, as well as emotional distress in having to deal with a disputed debt which was repeatedly placed or assigned to at least four different debt collectors, despite T-Mobile being made aware of the disputed, illegitimate nature of the Debt.

**WHEREFORE**, Ms. Armstrong respectfully requests this Honorable Court enter judgment against T-Mobile and for her as follows:

a. Statutory damages of $1,000.00 pursuant to § 559.77(2), Fla. Stat.;

b. Actual damages pursuant to § 559.77(2), Fla. Stat.;

c. Reasonable costs and attorney's fees pursuant to pursuant to § 559.77(2), Fla. Stat.; and,

d. Such other relief that this Court deems just and proper.

## COUNT XVI
## NEGLIGENCE—T-MOBILE

180.   Ms. Armstrong adopts and incorporates paragraphs 1 – 111 as if fully stated herein.

181.   T-Mobile was aware when it sold a bulk portfolio of Sprint debts to Jefferson in or around December 2023 that a significant portion of the accounts were disputed, and some were not legitimately-owed debts.

182.   T-Mobile was aware that Ms. Armstrong's debt had been returned to it at least three times as disputed, and in two instances, that the Debt was involved in legal action.

183.   T-Mobile could have easily disclosed to Jefferson that the Debt was disputed and twice-involved in legal proceedings, but did not.

184.   T-Mobile was aware it had a legal duty to disclose this information to Jefferson, but did not; likewise, it was aware that, absent these disclosures, the account data would likely be re-reported by Jefferson as a non-disputed debt.

185.    T-Mobile has a legal duty to act with reasonable care towards anyone who could foreseeably be harmed by its conduct.

186.    Ms. Armstrong, a consumer with a thrice-disputed debt bundled in with other debts purported to be "collectable" by T-Mobile, is within this "zone of risk" – T-Mobile is well aware that, absent disclosure to the contrary, a debt buyer will likely default to the presumption the debt is non-disputed and owed.

187.    T-Mobile breached this duty of care when it failed to either remove Ms. Armstrong's account from the bulk portfolio sale, or, at the absolute minimum, advise Jefferson of the repeated disputes and legal action concerning the Debt.

188.    As a result of this breach, Ms. Armstrong's credit reports and scores were adversely affected by Jefferson, in part due to T-Mobile's failures.

**WHEREFORE**, Ms. Armstrong's respectfully requests this Honorable Court enter judgment against T-Mobile for:

a.    Ms. Armstrong's actual damages;

b.    Such other relief that this Court deems just and proper.


## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted on **April 22, 2024,** by:

                    **SERAPH LEGAL, P.A.**

                    */s/ Christian E. Cok*
                    Christian E. Cok Esq.
                    Florida Bar Number: 1032167
                    Seraph Legal, P. A.
                    2124 W Kennedy Blvd., Suite A
                    Tampa, FL 33606
                    (813) 321-2349
                    CCok@SeraphLegal.com
                    *Counsel for Plaintiff*

**<u>ATTACHED EXHIBIT LIST</u>**

A    Plaintiff's Experian Consumer Disclosure, September 1, 2020 – Sunrise Tradeline, Excerpt

B    Plaintiff's Experian Consumer Disclosure, November 30, 2020 – AFNI Tradeline, Excerpt

C    Plaintiff's Experian Consumer Disclosure, January 7, 2022 – Convergent Tradeline, Excerpt

D    Plaintiff's Experian Consumer Disclosure, April 6, 2024 – Jefferson Tradeline, Excerpt